UNITED STATES of America, Appellee,

v.

Darron Gregory GILLIAM, Appellant.

Nos. 97–3084, 97–3085.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 14, 1998.

Decided Feb. 26, 1999.

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for appellant Darron Gregory Gilliam. With him on the briefs was A. J. Kramer, Federal Public Defender.

Edward C. Sussman, appointed by the court, argued the cause and filed the briefs for appellant Ricardo Matthew Gross.

Chrisellen R. Kolb, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher, Assistant U.S. Attorney.

Before: SILBERMAN, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

■ Darron Gilliam and Ricardo Gross appeal their convictions for armed bank robbery and related offenses on the grounds that the district court erred in denying their motions to suppress evidence and statements, for severance under Fed.R.Crim.P. 14, and for judgment notwithstanding the verdict on the firearms charges. Gross also challenges the district court's denial of his motion for judgment notwithstanding the verdict on his conviction for carjacking.[1] Finally, Gilliam challenges his sentence under the "three strikes" statute, 18 U.S.C. § 3559(c) (1994), on the ground that the government failed to prove that he had previously been convicted of two serious violent felonies. We affirm all of the convictions except Gilliam's § 922(g) firearms conviction.

## I.

As a result of a robbery of the Hospitality Community Federal Credit Union, Gilliam and Gross were indicted for armed bank robbery, 18 U.S.C. § 2113(a) and (d) (1994); the use or carrying of two firearms during a crime of violence, id. § 924(c) (1994); possession of firearms by a convicted felon, id. § 922(g) (1994); armed carjacking, D.C.Code Ann. §§ 22–2903 and 22–105 (1981); and first-degree theft from a senior citizen, id. §§ 22–3811, 22–3812(a), 22–3901 and 22–105 (1981).[2] They were found guilty by the district court of the felon-in-possession count

---

1. Gross also contends that he was severely prejudiced by the district court's refusal to make an in limine ruling as to whether the government could cross-examine his wife about an alleged inappropriate contact with a juror. The district court declined to rule before direct examination, and Gross chose not to put his wife on the stand. Because he did not call his wife to testify, Gross forfeited his right to raise this issue on appeal.

*See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

2. Prior to trial, on the government's motion, the district court dismissed the charge of possession of two firearms during a crime of violence (the armed carjacking), in violation of D.C.Code §§ 22–3204(b) and 105.

and by the jury on all other counts.[3] A third defendant, Jerome Thomas, was acquitted on all counts. The district court sentenced Gilliam to two mandatory terms of life imprisonment under the "three strikes" statute, 18 U.S.C. § 3559(c), for armed robbery and the § 924(c) firearms conviction, and Gross to an aggregate of 228 months imprisonment.

We review the evidence in Part II, where we address appellants' contention that the district court erred in denying their motions to suppress evidence and statements because the police lacked probable cause for a warrantless search of a bag in Gilliam's car. In Part III, we address appellants' severance claims. In Part IV, we address their challenges to their firearms convictions. Finally, in Part V, we address their challenges to their sentences.

## II.

At approximately 7:30 a.m. on January 31, 1996, two masked men robbed the Hospitality Community Federal Credit Union in Northeast Washington, D.C., taking over $142,000 in cash and $242,000 in food stamps. The masked men confronted Ellsworth Brewer, the bank manager, as he was opening the bank's parking lot gate so that he could park his car, which was nearby with the driver's door open and the engine running. One man pressed something hard into Brewer's back that Brewer thought was a gun; the masked man said, "[y]ou know what this is. Don't act crazy." Brewer saw about two inches of a gun barrel protrude from the hands of the other man. While one masked man led Brewer to the bank, the other parked Brewer's car in the gated lot. The masked men then forced Brewer to let them into the bank; while one tied Evangeline Brown (another employee who was already in the bank) with duct tape, the other told Brewer that if he missed the combination for the vault, he would be shot in the head and his brains blown out. After obtaining cur-

rency and food stamps from the vault, the masked men tied Brewer and fled, taking Brewer's car.[4] Brewer and Brown described the masked men as being about six feet tall: one was wearing a light tan or beige trench-coat, dark corduroy pants, and gloves; the other was wearing a dark three-quarter length coat.

While canvassing the crime scene, the police found Gilliam's wallet, with his photo identification, in the bank's parking lot, along with a laundry bag like that used by the masked men to carry the currency and food stamps from the bank. Upon determining that Gilliam had a criminal record, including a prior armed robbery, the police went to his home at approximately 9:30 a.m. and learned from a neighbor that about an hour earlier, Gilliam drove up with two other men in a gray Plymouth Reliant K car, unloaded cardboard boxes and plastic bags, and took them into Gilliam's house. About 45 minutes later, the police saw two men leave Gilliam's house and get into the same gray car, which had been parked in front of the house. Each man was carrying a plastic bag; one was wearing a tan trench-coat and the other was wearing a dark coat.

The police followed the car until it stopped and its two occupants, Jerome Thomas and Ricardo Gross, got out. At that point, the police ordered Thomas and Gross away from the car and to the sidewalk, where they were placed on the ground and handcuffed. Through the open car door, a police officer saw the tan trench coat draped across the front passenger seat and partially hanging over a plastic bag. Believing that the bulky, bundled objects outlined in the bag were likely proceeds from the robbery, the officer searched the bag and found over $15,000 in cash and $1,270 in food stamps. Gross and Thomas were then formally arrested; Gilliam was arrested at approximately the same time near his house.[5] A subsequent search of

---

**3.** The defendants elected a bench trial on the § 922(g) charges.

**4.** Brewer's car was found more than a month after the robbery with a broken steering wheel column near K Street, N.E.

**5.** Both appellants engaged in incriminating conduct. When Gross was told that he was under arrest, he asked, "What is it? Did somebody see the car?" He later told one of the detectives in the transport car "I messed up this time." Gilliam, in identifying himself to the police, reached for his wallet and discovered that it was missing.

Gilliam's home led to the recovery of two ski masks, gloves, a 9mm handgun, a semiautomatic pistol, a piece of paper stamped with the name of the credit union, approximately $117,500 in cash, and approximately $136,000 in food stamps. A subsequent search of the car produced two additional plastic bags found in the back seat containing $900 in currency, money wrappers, checks block-stamped from the credit union, and a small key from a teller's cash drawer that fit the drawers of the bank. In the pocket of the trench coat the police found a roll of duct tape, which contained Gross' fingerprint, that matched the duct tape used to tie Brown and Brewer at the bank. A sales receipt and registration in the glove box confirmed that the car was Gilliam's.

 Probable cause to arrest exists where "the facts and circumstances" within a law enforcement officer's knowledge are "sufficient to warrant a prudent [person] in believing that [the suspects] had committed or [were] committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see also Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Lincoln,* 992 F.2d 356, 358 (D.C.Cir.1993). Probable cause to search exists where in view of the "totality of the circumstances," "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Turner,* 119 F.3d 18, 20 (D.C.Cir.1997). "Although probable cause to arrest and probable cause to search have different emphases," *United States v. Dawkins,* 17 F.3d 399, 404 (D.C.Cir.1994), articulating when probable cause exists is a "common sense" determination, which turns on the "practical considerations of everyday life." *Gates,* 462 U.S. at 231, 103 S.Ct. 2317 (quoting *Brinegar,* 338 U.S. at 175, 69 S.Ct. 1302). While each fact standing alone may be insufficient, the combination of all of the facts can establish probable cause, *United States v. Catlett,* 97 F.3d 565, 574 (D.C.Cir.1996); *United States v. Halliman,* 923 F.2d 873, 881 (D.C.Cir.1991), and certain conduct that may appear "innocent to a lay person may have entirely different significance to an experienced [law enforcement] officer." *Catlett,* 97 F.3d at 573–74 (quoting *United States v. Hicks,* 752 F.2d 379, 384 (9th Cir.1985)). We review the legal conclusion of probable cause *de novo,* the district court's findings of historical fact for clear error, and we give due weight to inferences drawn from the evidence by law enforcement officers and the district court. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Harrison,* 103 F.3d 986, 989 (D.C.Cir.1997).

 Applying these principles, we find no error in the district court's denial of appellants' motions to suppress the evidence found in the bag in Gilliam's car.[6] Based on the physical evidence at the robbery scene, the eyewitnesses' statements, and the tight time frame, as well as their own observations and those of Gilliam's neighbor, the police had reason to believe that the two men who got into Gilliam's car had participated in criminal activity. *Compare Brinegar,* 338 U.S. at 175–76, 69 S.Ct. 1302, *and Catlett,* 97 F.3d at 573, *and Halliman,* 923 F.2d at 881–82, *and United States v. Young,* 598 F.2d 296, 298–300 (D.C.Cir.1979), *and Coleman v. United States,* 420 F.2d 616, 621 (D.C.Cir.1969), *with Beck,* 379 U.S. at 91, 85 S.Ct. 223, *and Henry,* 361 U.S. at 100–02, 80 S.Ct. 168. The same evidence provided a sufficient foundation for the police to believe that a plastic bag carried into the car by the two men leaving Gilliam's home was likely to contain proceeds of the robbery. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *Turner,* 119 F.3d at 20; *Dawkins,* 17 F.3d at 404; *United States v. Garrett,* 959 F.2d 1005, 1007–08 (D.C.Cir. 1992); *United States v. Caroline,* 791 F.2d

---

6. The government contends that only Gilliam preserved his Fourth Amendment appeal because Gross conceded that there was no basis upon which to challenge the seizure of evidence from the car if officers could rely on their collective knowledge to establish probable cause. We dis-

agree. Although Gross' counsel acknowledged the legal standard, he proceeded to attack the officers' collective knowledge and argued in the district court that there was no basis for a probable cause finding.

197, 201 (D.C.Cir.1986). The police officer at the scene of the robbery noted that the bank manager had not told him that either a wallet or laundry bag had been in the parking lot prior to the robbery. It was reasonable, therefore, for the police to connect the wallet and bag with the masked men and to believe that Gilliam's home or the car in which he had been seen after the robbery might contain evidence of the robbery. *See United States v. Salamanca,* 990 F.2d 629, 634–35 (D.C.Cir. 1993).

Gilliam's neighbor saw Gilliam and two other men drive to Gilliam's house in a gray Plymouth K car the morning of the robbery. Shortly thereafter, the police saw Gross and Thomas get into the same car upon leaving Gilliam's house. Given the closeness in time and use of the same car, the police could reasonably believe that Gross and Thomas were the same men who arrived at the house with Gilliam. One man wore a tan trench coat similar to that worn by one of the masked robbers. Both men carried bulky, heavy plastic bags. A police officer thought that one of the plastic bags he saw through the open car door contained bulky objects consistent with the shape of money and food stamps. Viewed in its totality, the evidence provided probable cause for the police to search the plastic bag and to seize the bundled money and food stamps found in the bag. *See California v. Acevedo,* 500 U.S. 565, 573–74, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *cf. United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Caroline,* 791 F.2d at 201–02.

Because the police had probable cause to search the plastic bag, we do not reach the issue of whether there was also probable cause to search the entire car (which was searched later pursuant to a warrant), *see Ross,* 456 U.S. at 799–800, 102 S.Ct. 2157; whether the police could have seized the plastic bag and its contents in a valid search incident to arrest, *see New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *cf. United States v. Fafowora,* 865 F.2d 360 (D.C.Cir.1989); whether the contents of the bag would have been inevitably discovered by lawful means; *see Nix v. Williams,* 467 U.S. 431, 447–48, 104 S.Ct.

2501, 81 L.Ed.2d 377 (1984); or whether the police, pursuant to a *Terry* stop, could have searched the bag in a protective sweep for weapons. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Appellants' contention that the evidence subsequently found in Gilliam's home and car, and the statements made by Gross after his arrest, should also have been suppressed as the fruit of an illegal search fails given the lawful search of the bag in the car. Hence, the district court did not err in denying appellants' motions to suppress.

### III.

Appellants also contend that the district court abused its discretion in denying their motions for severance of defendants under Fed.R.Crim.P. 14. *United States v. Brown,* 16 F.3d 423, 427 (D.C.Cir.1994); *United States v. Manner,* 887 F.2d 317, 324 (D.C.Cir. 1989). They maintain that because there were three defendants and only two masked robbers, each defendant's claim of innocence was tantamount to presenting the prosecutor's case against the other two defendants; indeed, the government's silence on their respective roles in the commission of the robbery heightened their need to incriminate each other. In addition, they contend that a severance was required because the joint trial compromised their right to exclude inadmissible evidence that was seriously prejudicial: Gilliam's letter to Thomas and Gross' testimony about Gilliam's alleged drug activity.

In appellants' view, they presented mutually antagonistic defenses that necessitated a severance of their trials under Rule 14. Gilliam did not testify, but Gross and Thomas did, each attempting to prove that he was not one of the two masked robbers. Thomas testified that he went to Gilliam's house to borrow money for car repairs and just happened to be there when the other two men arrived in Gilliam's gray Reliant K car. Over his codefendants' objections, Thomas introduced a letter from Gilliam stating that Thomas had nothing to do with the robbery, and that Gilliam would somehow inform the

trial judge of this fact. Gross, in turn, presented a different innocent presence defense, testifying that he had no knowledge of the robbery and, over Gilliam's objection, that he had gone to Gilliam's house for drugs and met Thomas there. In closing argument, Gilliam's counsel told the jury that it could infer from the evidence that Gross and Thomas were the two masked robbers.

 Mutually antagonistic defenses exist where the acceptance of one defendant's defense is irreconcilable with the defense presented by a codefendant. *See Zafiro v. United States*, 506 U.S. 534, 537–38, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Under Rule 14, concerns about prejudice stem from the danger that the jury will unjustifiably infer that this conflict alone demonstrates that both defendants are guilty, *United States v. Haldeman*, 559 F.2d 31, 71–72 (D.C.Cir.1976); *Manner*, 887 F.2d at 326; *see Zafiro*, 506 U.S. at 537–38, 113 S.Ct. 933, or alternatively, that the jury will decide that at least one of the defendants is guilty regardless of whether the government has met its burden of proof. *Zafiro*, 506 U.S. at 542, 113 S.Ct. 933 (Stevens, J. concurring). To demonstrate that the district court abused its discretion in denying a severance, however, the appellant must show more than "the presence of some hostility" among codefendants, and "more than the fact that co-defendants whose strategies were generally antagonistic were tried together." *Brown*, 16 F.3d at 433 (internal quotations omitted). Even where codefendants implicate each other, their defenses are not necessarily mutually antagonistic, and even when they are mutually antagonistic, they are not necessarily improperly prejudicial. Thus, in *Brown*, 16 F.3d at 433, despite the fact that the first defendant's denial of any involvement in the charged offense was contradicted by a second defendant's defense that the drugs and gun seized from her apartment belonged to the first defendant, the court noted that the jury could have believed either defense or could have believed that neither defense was entirely accurate. *See id.* Observing that Brown's real concern was that his codefendant's testimony was damaging to his defense, the court noted that a defendant is not ordinarily entitled to exclude testimony of a for-

mer codefendant if the district court severed their trials. *Id.*

In the instant case, the government's evidence showed that only two men were at the bank. Gross and Thomas each claimed he was not at the bank, but neither pointed the finger at one or more of the other defendants. Gilliam denied any involvement. In theory, the jury could have accepted either Gross' or Thomas' defense, or all three defenses, concluding in the latter circumstance that the government had charged the wrong men. By thus putting the government to its proof, there was no logical inconsistency in their defenses for Rule 14 purposes. *Compare State v. Kinkade*, 140 Ariz. 91, 680 P.2d 801, 804 (1984) (describing codefendants' defenses as "completely antagonistic" where only one of two codefendants could have committed the charged murder, each of the two codefendants admits being present at the crime scene, each charges the other with having committed the crime, and there is no possibility that a third party was present).

Even if appellants' defenses were mutually antagonistic, the Supreme Court concluded in *Zafiro* that a severance under Rule 14 should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539, 113 S.Ct. 933; *see also United States v. Moore*, 104 F.3d 377, 383–84 (D.C.Cir.1997); *United States v. Applewhite*, 72 F.3d 140, 144 (D.C.Cir.1995). As examples of serious risk, the Court listed the inadmissibility of evidence if tried separately, markedly different degrees of culpability, or if essentially exculpatory evidence available to a defendant tried alone were inadmissible in a joint trial. *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Moreover, the Court added that even when the risk of prejudice is high, less drastic measures, such as limiting instructions, will often suffice as a remedy. *Id.*

Appellants cannot show that the potential prejudice they faced from a joint trial rises to the *Zafiro* standards. Each defendant's culpability was separately demonstrated. The evidence of the location of Gilliam's wallet,

his home as the hiding place for the robbery proceeds, and the use of his car to carry away the proceeds, all combine to demonstrate his direct involvement in the robbery and its immediate aftermath. Gross' involvement in the robbery was independently clear from his fingerprint on the duct tape used to tie up the two bank employees. Thomas admitted he knew that the money was from a bank, and he was seen leaving Gilliam's home with a bulky bag and driving away with Gross in Gilliam's car later the same morning of the robbery. The district court instructed the jury to consider the relevant evidence against each defendant separately "as if he were being tried alone," and further, that the conduct or evidence against any one of the defendants should not influence the jury's deliberation on the others' guilt or innocence. The jury is presumed to follow the court's instructions, *see, e.g., Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and the verdicts indicate that the jury was able to distinguish between the defendants, as it found Thomas not guilty of the robbery and § 924(c) firearms charge.

Still, appellants contend that they were seriously prejudiced by the compromise of their right to exclude inadmissible evidence: Gilliam's letter to Thomas was admitted over their objections as a statement by Gilliam against his interest. *See* Fed.R.Evid. 804(b)(3). However, only Gross moved for severance based upon the resulting prejudice; Gilliam objected on evidentiary grounds alone, and he can hardly show that the denial of a severance was plain error. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even if the district court erred in admitting the letter as a statement against interest, the government could have introduced it against Gilliam in a separate trial as an admission by a party opponent. *See* Fed.R.Evid. 801(d)(2); *United States v. Bolden,* 514 F.2d 1301, 1311 (D.C.Cir.1975). In any event, jury had "independent and substantial" evidence to convict him regardless of the admission of his statements in the letter. *Halliman,* 923 F.2d at 884 (quotation marks and citation omitted). His wallet was found at the robbery scene and the proceeds of the robbery were found in his home. Moreover,

the letter, as read to the jury, tended to exculpate Thomas rather than inculpate Gilliam.

As for Gross, the admission of the statements in Gilliam's letter to Thomas had no prejudicial effect as would require a severance, even though Gross maintains that while the redacted letter did not refer to him, he was implicated through its exoneration of Thomas. This is another way of making a claim of mutually antagonistic defenses and is unpersuasive. Furthermore, whether the letter would have been admissible in a separate trial against Gross, there was "independent and substantial" evidence to convict him: his fingerprint was on the duct tape found inside the bank. *Id.* Insofar as Gross also contends that he was denied his Sixth Amendment right to cross-examine Gilliam about his statements to Thomas, his claim fails because Gilliam's statements did not expressly implicate him. *See Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 1154–57, 140 L.Ed.2d 294 (1998); *Richardson,* 481 U.S. at 211, 107 S.Ct. 1702; *Applewhite,* 72 F.3d at 145.

Nor can Gilliam show that the district court's denial of a severance was an abuse of discretion by reason of the admission of Gross' testimony about Gilliam's involvement with drugs. Although the government has failed to point to a permissible purpose under Rule 404(b) for admitting the evidence in a separate trial of Gilliam, the evidence of his guilt was overwhelming. Moreover, the prejudice was mitigated to some extent by the district court's cautionary instructions to the jury when the testimony was admitted, and by the final instructions to the jury before it retired to deliberate that any evidence of drugs inside Gilliam's home was to be considered only as it related to Gross. Thus, his claim of prejudice fails. *See Halliman,* 923 F.2d at 884.

Accordingly, the district court did not abuse its discretion in denying appellants' motions for severance under Rule 14.

### IV.

Appellants challenge their firearms convictions under 18 U.S.C. §§ 924(c) and

922(g). Gilliam and Gross were both charged with the use or carrying of a Beretta 9mm handgun and an Intratech .22 caliber Scorpion Machine (semiautomatic) Pistol, during a crime of violence. Under § 924(c)(1), the use or carrying of a semiautomatic firearm increases the statutory penalty from a five-year to a ten-year mandatory sentence. Appellants maintain, in effect, that because there was no direct evidence that both of the masked men had a gun, much less that one of the guns was a semiautomatic weapon, the government failed to meet its burden to prove that appellants used or carried two guns, either as a principal or as an aider and abettor. Of course, the government may meet its burden of proof by circumstantial as well as direct evidence. *See, e.g., United States v. Treadwell*, 760 F.2d 327, 333 (D.C.Cir.1985) (citing *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence before the trier of fact, the district court properly denies a motion for judgment of acquittal notwithstanding the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Harrington*, 108 F.3d 1460, 1464 (D.C.Cir.1997). Viewing the evidence, direct and circumstantial, in the light most favorable to the government, as we must, *see United States v. Graham*, 83 F.3d 1466, 1470 (D.C.Cir.1996), the jury could reasonably find that in robbing the bank appellants used and carried two guns, one of which was a semiautomatic pistol.

▮▮▮ Appellants do not contest that a defendant can be convicted under § 924(c) on an aiding and abetting theory for his codefendant's use of a gun. If there is evidence from which the factfinder may infer that each defendant was aware that the other was armed, then one defendant's knowledge of the gun may be imputed to the other defendant. *See, e.g., Harrington*, 108 F.3d at 1471; *United States v. Price*, 76 F.3d 526, 529 (3d Cir.1996). But, here, they maintain, the evidentiary deficiency arises from the

fact that there was no evidence that anyone saw a second gun during the robbery. However, the bank manager testified that while he was detained by one of the masked men he saw about two inches of a gun barrel, akin to a handgun, protrude from the hands of the other masked man. The other bank employee saw the same masked man point a black handgun at her, threatening "don't move or I'll shoot you." While neither bank employee actually saw a second gun, there was circumstantial evidence that the two masked men had a second gun. The bank manager testified that one of the men pressed a hard object against his side and threatened to blow his brains out; the robber warned, "you know what this is. Don't act crazy," and when they reached the vault, the same robber told the manager not to miss the combination, or he would "blow [his] … brains out." Combined with the evidence that the police had recovered two guns in Gilliam's home inside of the same bag as the ski masks and stolen cash, a reasonable jury could find that, given the fact that two masked men were attempting to rob a bank, the object felt by the manager was a gun: it was hard like a gun and a gun was the type of tool needed to carry out the threat.

The absence of evidence of a direct sighting of the second gun by either bank employee is, therefore, immaterial. *See Treadwell*, 760 F.2d at 333. In none of the cases on which appellants rely did the police recover the alleged gun. *See United States v. Jones*, 16 F.3d 487, 490 (2d Cir.1994); *United States v. Patino*, 962 F.2d 263, 265 (2d Cir.1992); *Parker v. United States*, 801 F.2d 1382, 1383 (D.C.Cir.1986). Because the object was the robbery of a federal credit union and one of the masked men was armed, the jury could reasonably infer from the threatening statements and the discovery of both guns that the second masked man was also armed, with a semiautomatic. So viewed, Gilliam and Gross were responsible for two weapons; each carried and used a gun during the robbery, and each aided and abetted his partner's use.[7] *See, e.g., Harrington*, 108 F.3d at 1471; *Price*, 76 F.3d at 529.

---

7. Contrary to appellants' assertion, the government did not take the position on appeal that

evidence of the use or carrying of one of the two

■ Appellants' contention, raised for the first time on appeal, that the government should be required to prove their specific knowledge where a semiautomatic or automatic weapon is involved is barred by our decision in *United States v. Harris,* 959 F.2d 246 (D.C.Cir.1992). Foreshadowing the Supreme Court's reasoning in *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), this court held in *Harris* that the National Firearms Act, 26 U.S.C. § 5861(d), which makes possession of an unregistered automatic weapon unlawful, implicitly requires that a defendant have specific knowledge that a weapon is automatic because an otherwise law abiding citizen "who has come into possession of an automatic weapon ... quite possibly has no reason to be aware that the weapon is a 'firearm' within the meaning of the statute." *Harris,* 959 F.2d at 259.[8] But the court expressly declined to extend such reasoning to § 924(c) because the government already had the burden of proving under § 924(c) that a defendant knowingly engaged in criminal behavior with a firearm. *See id.* Thus there was no need for an additional element of knowledge of the specific type of gun because regardless of the kind of gun, the defendant's mental state was just as culpable. *See id.*

Put otherwise, and contrary to appellants' position, *Harris* applied strict liability for the type of gun used by a defendant in committing a § 924(c) offense. *See id.* at 258. Consequently, appellants' reliance on *Staples,* in which the Supreme Court reversed a conviction under 18 U.S.C. § 5861(d) in the absence of proof of knowledge, is to no avail. Other circuits have also held that *Staples* does not extend a special *mens rea* requirement to § 924(c), on the rationale that because the semiautomatic provision of § 924(c) is a sentencing enhancement and not an element of the offense, a separate *mens rea* need not be proven. *See United States v. Shea,* 150 F.3d 44, 51–52 (1st Cir.), *cert. denied,* —— U.S.

——, 119 S.Ct. 568, 142 L.Ed.2d 473 (1998); *United States v. Brantley,* 68 F.3d 1283, 1289–90 (11th Cir.1995). Accordingly, by introducing evidence from which a reasonable jury could find that appellants used and carried two guns during the robbery, and that the search of Gilliam's home revealed one of the guns was a semiautomatic, the government met its burden of proof under § 924(c).

■ Gross' further contention that because the evidence indicates he carried the handgun, he cannot be convicted for aiding and abetting the use of the semiautomatic is also without merit. There is no authority to support Gross' assertion that a defendant's carrying of a gun in a joint robbery precludes him from being liable for aiding and abetting the use of his co-defendant's firearm. *United States v. Anderson,* 59 F.3d 1323 (D.C.Cir.1995) (in banc), on which Gross relies, simply states that § 924(c) does not sustain multiple gun convictions for a single underlying criminal act. There is no *Anderson* problem here because the government charged both guns in the same § 924(c) count, and upon conviction, the district court sentenced Gross for only the semiautomatic weapon.

One of the challenges to a § 922(g) conviction is not so readily disposed of, however. Under § 922(g) it is unlawful for anyone who has been convicted of a crime punishable by a sentence over a year to possess a firearm that has traveled in interstate commerce. *See, e.g., United States v. Jones,* 67 F.3d 320, 324 (D.C.Cir.1995). Gross' contention that the government failed to offer any evidence of his prior convictions flounders on his admission on the witness stand to a prior conviction for attempted distribution of heroin and his counsel's statement, without dissent by Gross, to the district court that Gross conceded that his prior conviction qualified as a predicate conviction for the felon-in-possession count. Gilliam, on the other hand, made no such concession or admission, and there is no evidence that he waived his

firearms was sufficient to support the § 924(c) convictions.

**8.** In *Staples,* 511 U.S. at 603, 114 S.Ct. 1793, the Supreme Court reversed the conviction of a defendant for failing to register a semiautomatic weapon that had been modified to be capable of fully automatic fire because the jury had not been allowed to consider the defendant's claim that he did not know that the weapon had such automatic capability.

right to put the government to its proof. *Cf. Olano,* 507 U.S. at 733, 113 S.Ct. 1770; *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

It is undisputed that under § 922(g), the government must prove that the defendant has a prior felony conviction. Here, the prosecutor informed the district court that he had a certified copy of a prior conviction of Gilliam, but never submitted the document to the court for introduction into evidence. Nor at any time did the prosecutor represent to the district court that Gilliam had expressly agreed that proof of his prior convictions was unnecessary. On appeal the government maintains that because Gilliam did not challenge the prosecutor's representation that he had a certified copy of a 1986 robbery conviction and that Gilliam had been convicted of the three prior felony offenses charged in count three of the indictment, he "essentially stipulat[ed] to this prior felony element of the § 922(g) offense." Consequently, in the government's view, the failure formally to introduce the certificate was not fatal.

Before hearing any evidence the district court engaged Gilliam in a colloquy about his criminal record. The prosecutor proffered that Gilliam had prior convictions for armed robbery, robbery, kidnaping, obstruction of justice, assault with a deadly weapon, and carrying a deadly weapon. The court inquired, "I assume you're not challenging these convictions. You're not saying that these are not your prior convictions, right?" Gilliam answered, "[n]o, I'm not. . . . Not at this time anyway." The prosecutor did not offer into evidence at the bench trial on the felon-in-possession count any documentary or other evidence to prove that Gilliam had the requisite prior convictions. Recalling perhaps that the district court had engaged Gilliam in a pretrial colloquy about his criminal record, the prosecutor apparently failed to recall that in responding to the district court's inquiry Gilliam gave a qualified denial, leaving open his option to challenge his prior convictions at a subsequent time. Thus, in the absence of waiver or an admission by Gilliam, there was no evidence before the court to prove Gilliam's prior record.

■ Although the government relies on Gilliam's silence in failing to challenge his prior convictions, the burden remained on the government to offer into evidence proof of every element of the charged offense. While it could have done so by a stipulation with the defendant or by a waiver by the defendant of his right to put the government to its proof, neither occurred here. *Cf. Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997); *Olano,* 507 U.S. at 733, 113 S.Ct. 1770 (quoting *Johnson v. Zerbst,* 304 U.S. at 463, 58 S.Ct. 1019); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The government's reliance on *United States v. Hardin,* 139 F.3d 813 (11th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 225, 142 L.Ed.2d 185 (1998), and *United States v. Branch,* 46 F.3d 440 (5th Cir.1995), in which the defendants had entered into stipulations with the government on an element of the crimes charged, is misplaced. Indeed, even if there had been a stipulation, the government may well still have needed to introduce the stipulation into evidence, for as the Ninth Circuit has observed, whether there is a stipulation between the defendant and the government, if it is not offered in evidence there is "no fact in evidence that the [trier of fact] could take as proved." *United States v. James,* 987 F.2d 648, 651 (9th Cir.1993); *cf. United States v. Muse,* 83 F.3d 672, 678–81 (4th Cir.1996). Because there was neither a stipulation nor other waiver by Gilliam, nor proof by introduction into evidence of the certified copy of his prior conviction, the government failed to present evidence on an element of the § 922(g) offense. *See Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ By contrast, Gross' challenge to his conviction for carjacking, on the ground that because the bank manager was away from his car at the time he was assaulted by the robbers, there was insufficient evidence to convict him of carjacking under D.C.Code § 22–2903 (1981), fails. A carjacking occurs so long as the victim is in immediate actual possession of the vehicle. *See Pixley v. United States,* 692 A.2d 438 (D.C.1997). "Immediate possession," an element borrowed from the crime of robbery, *see Pixley,*

692 A.2d at 440, is retained if the car is within such range that the victim could, if not deterred by violence or fear, retain actual physical control over it. *See, e.g., Spencer v. United States,* 116 F.2d 801, 802 (D.C.Cir. 1940); *Rouse v. United States,* 402 A.2d 1218, 1220 (D.C.1979). Although the bank manager had stepped out of his car to unlock the parking lot gate, he left the car running with the driver's door open. The jury could reasonably find that the bank manager intended to get back into his car to park it in the credit union lot once he had opened the gate, but the robbers prevented him from doing so, and thus deprived the manager of immediate possession of his car. As for Gross' contention that he never intended to steal the car, the statute does not require that the government prove specific intent to steal. *See Pixley,* 692 A.2d at 439–40; *see also Allen v. United States,* 697 A.2d 1, 2 (D.C.1997).

Thus, the district court erred only in denying Gilliam's motion for judgment notwithstanding the verdict on the § 922(g) charge.

### V.

Finally, appellants attack their sentences. Insofar as Gross contends that the district court erred in sentencing him to a consecutive ten-year term for the use or carrying of a semiautomatic weapon in violation of § 924(c)(1), this is another way of claiming that there was insufficient evidence to convict him for the use or carrying of the semiautomatic pistol, and hence his contention is without merit. Gilliam, on the other hand, contends that the district court erred in imposing two life sentences under the "three strikes" statute, 18 U.S.C. § 3559(c),[9] be-

cause the government failed to prove that he had at least two prior predicate convictions for serious violent felonies.

Gilliam first maintains that in view of the severity of the penalty under the statute, due process requires the district court to hold an evidentiary hearing before imposing a mandatory life sentence. The three strikes statute incorporates a notice requirement from the Controlled Substances Act, 21 U.S.C. § 851(a), requiring the government to give the defendant formal notice in an information of the defendant's predicate convictions on which the government intends to rely in seeking the imposition of life imprisonment. *See* 18 U.S.C. § 3559(c)(4). The government gave Gilliam such notice. However, other provisions of the Controlled Substances Act, namely §§ 851(b) and (c), require the district court to ask the defendant to admit to or deny his prior convictions, and upon a denial, the court must conduct an evidentiary hearing in which the government must prove the convictions beyond a reasonable doubt. 21 U.S.C. § 851(c). Gilliam contends that the statute should be read to incorporate some of the additional due process requirements of §§ 851(b) and (c).[10]

There is, however, no authority to support Gilliam's contention, and the Tenth Circuit has rejected it, concluding that "[t]he fact that the defendant does not concede the existence or seriousness of former convictions does not automatically require a separate section 3559 hearing." *United States v. Oberle,* 136 F.3d 1414, 1424 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 197, 142 L.Ed.2d 161 (1998). "Rather, it is only when a defendant tenders evidence to deny the seriousness of the former convictions or to

9. 18 U.S.C. § 3559(c) provides in relevant part:
(1) ... a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—
(A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of—
(i) two or more serious violent felonies.

10. Gilliam stated in a footnote of his brief that although due process "arguably" "may well require" a higher standard of proof than a preponderance of the evidence as well as an evidentiary

hearing where the sentence enhancement under three strikes imposes a punishment greater than the maximum sentence authorized for the offense of conviction, he concluded that the court "does not have to address this issue" "because the government failed to prove Mr. Gilliam's prior convictions by even a preponderance of the evidence." He never directly argued that meeting the preponderance standard is insufficient, and the court will not construe the briefs to raise an argument that is hinted at but never stated. *Cf. United States v. Whren,* 111 F.3d 956, 958 (D.C.Cir.1997).

deny that the prior convictions pertained to him or her that the district court must conduct a hearing." *Id.* Even assuming §§ 851(b) and (c) were applicable, Gilliam made neither a tender nor a denial that would trigger an inquiry. Before sentencing, Gilliam and his counsel received the presentence report setting forth Gilliam's prior convictions, and acknowledged that the report did not contain any material factual inaccuracies.[11] In a memorandum in aid of sentencing, counsel asked only for consideration of Gilliam's mental condition. At sentencing, Gilliam's counsel stated, "[a]s the court [is] aware, there's very little I can say in this case, given the papers filed by the government and given Mr. Gilliam's convictions." Under the circumstances, even if Gilliam's statements did not constitute a waiver, his actions amounted to forfeiture and we find no plain error. *See Olano,* 507 U.S. at 732–33, 113 S.Ct. 1770. Because "[a]ll that [Gilliam] did was to put the government to its proof," *Oberle,* 136 F.3d at 1424, the district court could properly rely on the factual statements in the presentence report.[12] *See* Fed. R.Crim.P. 32(b)(6)(D); *Washington,* 115 F.3d at 1010; *United States v. Booze,* 108 F.3d 378, 381–82 (D.C.Cir.1997); *cf. United States v. Hill,* 131 F.3d 1056, 1065 (D.C.Cir.1997). Hence, the district court did not err in accepting the presentence report as meeting the government's burden to prove that Gilliam had two predicate convictions under § 3559(c). *Cf. Oberle,* 136 F.3d at 1424.

Accordingly, because the government failed to introduce evidence on an element of the offense, we reverse Gilliam's conviction under 18 U.S.C. § 922(g), but in view of evidence presented in connection with sentencing, we affirm his life sentences; otherwise we affirm the judgments of conviction.

---

11. Among the convictions noted in the presentence report was a 1971 kidnaping conviction and a 1986 armed robbery conviction, for which Gilliam received 6–18 years. Under subsection (2)(F)(i) of the three strikes statute, kidnaping qualifies as an enumerated serious violent felony. Under subsection (2)(F)(ii), armed robbery qualifies as a predicate offense "that by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense," and is punishable by a maximum term of imprisonment of 10 years or more.

12. Although the presentence report can resolve the three strikes sentencing issue, it cannot provide the necessary element of § 922(g) because it was neither acknowledged nor prepared prior to Gilliam's conviction for the offense. As to Gilliam's counsel's statement during oral argument in this court that there may be an issue of identification as to one of Gilliam's prior convictions, in the absence of any relevant record on appeal, such a claim must be presented initially to the district court. *See, e.g., Oliver v. United States,* 335 F.2d 724, 726 n. 2 (D.C.Cir.1964).