UNITED STATES of America,
Appellee,

v.

Richard M. HARRIS, Appellant.

No. 01–3057.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 2002.

Decided Dec. 31, 2002.

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for the appellant. A. J. Kramer, Federal Public Defender, was on brief.

Elizabeth H. Danello, Assistant United States Attorney, argued the cause for the appellee. Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Oliver W. McDaniel, Assistant United States Attorneys, were on brief.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Richard M. Harris was convicted of criminal contempt for refusing to obey the district court's order to testify before a grand jury. He challenges the conviction on two grounds: (1) the evidence at the contempt hearing was insufficient to support his conviction and (2) the district court erred in rejecting without a hearing Harris's post-conviction claim of ineffective assistance of counsel. Because the Assistant United States Attorney (AUSA) did not introduce competent evidence below that Harris refused to testify before the district court grand jury, as charged, we reverse the contempt conviction for insufficient evidence. We therefore do not address Harris's ineffective assistance claim.

## I.

In 1998, while incarcerated in Virginia, Harris informed prison authorities he had furnished the name of a potential "hit man" to the two defendants in a pending felony prosecution in the District of Columbia Superior Court—*United States v. Tommy Zurita and Farid Rashid*—who planned to kill the complaining witness in the case. After failing to persuade Harris to enter a cooperation agreement, the government called him as a witness to testify about the planned "hit" before a D.C. Superior Court grand jury on December 15, 1998. Harris appeared but refused to testify, invoking his privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

■ The government applied to the district court for an order under 18 U.S.C. § 6003[1] to compel Harris to testify. In a January 7, 1999 order the district court granted the application and directed Harris to "give testimony or to provide other information which he would otherwise refuse to give or provide on the basis of his privilege against self-incrimination as to all

---

1. This statute provides:

**Court and grand jury proceedings**
(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.
(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

18 U.S.C. § 6003. The D.C. Superior Court was established by the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (1970), " 'pursuant to article I of the Constitution.' " *Palmore v. United States*, 411 U.S. 389, 398, 93 S.Ct. 1670, 1676–77, 36 L.Ed.2d 342 (1973) (quoting D.C.Code Ann. § 11–101(2) (Supp. V, 1972)). The D.C. Superior Court is therefore a "court of the United States" and the D.C. Superior Court grand jury is, accordingly, a "grand jury of the United States" subject to section 6003(a). *See, e.g., United States v. Rorie*, 518 A.2d 409, 412 (D.C.1986) (recounting that "United States District Court for the District of Columbia ordered appellee to testify under a grant of immunity pursuant to 18 U.S.C. § 6002 (1982)" before D.C. Superior Court grand jury).

matters about which he may be interrogated in the Grand Jury investigation of a murder-for-hire plot and obstruction of justice and during the trial or trials of *United States* v. *Tommy Zurita and Farid Rashid*." 1/7/99 Order at 2. The order further provided, pursuant to 18 U.S.C. § 6002,[2] that "[n]o testimony or other information, directly or indirectly, may be used against Richard M. Harris in any criminal case, excluding any other prosecution for perjury, giving false statements, or otherwise failing to comply with this Order." *Id.*

On January 21, 1999 Harris again appeared before a D.C. Superior Court grand jury and again refused to testify, invoking his Fifth Amendment privilege. He did the same before a district court grand jury on March 7, 2000.

On April 12, 2000 the government applied for an order to show cause why Harris should not be held in contempt for refusing to comply with the January 7, 1999 order. On April 18, 2000 the district court granted the application and scheduled a show cause hearing for May 4, 2000. At the hearing the AUSA summarized the government's factual allegations as a proffer only, that is, without formally introducing evidence, and Harris's lawyer offered a "duress" defense, relating that Harris was concerned about the safety of his family and indicating that, although he would not again invoke the Fifth Amendment, he "still cho[se] not to cooperate." 5/4 Tr. at

13. Harris's mother then testified that Harris knew that, should he testify, "there's a very good likelihood that somebody in his family is going to get killed." *Id.* at 17.

In a memorandum order filed January 11, 2001 the district court held Harris in criminal contempt for violating the January 7, 1999 order. The court expressly found that on "[o]n March 7, 2000, the United States called Mr. Harris to testify before a United States District Court grand jury" and that Harris "refused to answer any questions based on an assertion of a claimed privilege against self-incrimination." 1/11/01 Order at 3. The court rejected Harris's duress defense because "the fear described by Mr. Harris does not rise to the level of duress," noting that Harris "ha[d] not shown that he meets all the elements of duress," in particular "proof of immediacy." *Id.* at 6.

At a sentencing hearing on January 30, 2001, Harris asserted that his lawyer's representation at the contempt hearing had been ineffective and, in addition, that counsel had a conflict of interest that had arisen since the hearing. The district court agreed to appoint new counsel and postponed sentencing.

On April 5, 2001 Harris filed a pro se motion to vacate the contempt conviction, alleging, *inter alia,* insufficiency of evidence because the government failed to produce competent evidence of Harris's refusal to testify at the March 7, 2000 grand jury hearing, and ineffective assis-

2. This statute provides in relevant part:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

. . .

and the person presiding over the proceeding communicates to the witness an order issued under this title, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.

tance of counsel, because his lawyer failed to elicit important testimony in support of Harris's duress defense.

In an order filed May 2, 2001 the district court denied the motion to vacate. The court rejected the sufficiency argument because both the government, in its proffer accompanying the show cause application, and Harris's lawyer, in raising the duress defense at the hearing, affirmatively represented that Harris had refused to testify as charged and Harris, having failed to object contemporaneously, could not do so post-conviction. She rejected Harris's ineffective assistance claim because he had "fail[ed] to prove that the actions of counsel were not proper, tactical decisions." 5/2/2001 Order at 3. At a hearing on May 3, 2001 the court sentenced Harris to time served.

## II.

■ Harris contends the district court erred in denying his motion to vacate the conviction because the record contained neither testimonial nor documentary evidence to support the court's finding that he violated the January 7, 1999 order by refusing to testify. We agree that the finding is not supported by competent evidence and that Harris's conviction should therefore be reversed.[3]

In *United States v. Gilliam*, 167 F.3d 628, 638–39 (D.C.Cir.1999), the court reversed a conviction of possession of a firearm by a convicted felon, prohibited by 18 U.S.C. § 922(g), because the government failed to put into evidence a copy of the felony conviction it claimed to possess.

The government there, as here, asserted on appeal that, by failing to object to the lack of supporting evidence at trial, the defendant had waived his right to do so on appeal. The *Gilliam* court squarely rejected this argument because, notwithstanding the appellant's "silence in failing to challenge his prior convictions, the burden remained on the government to offer into evidence proof of every element of the charged offense." 167 F.3d at 639. "While it could have done so by a stipulation with the defendant or by a waiver by the defendant of his right to put the government to its proof, neither occurred...." *Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (citing *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022–23, 82 L.Ed. 1461 (1938)); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)). Similarly here, the government could have procured a stipulation or express waiver—but it did not. Nor did it follow the obvious course of entering relevant portions from the district court grand jury transcript into evidence.[4] Instead, the government offered no evidence to satisfy its burden of proof.

The government argues that the court should accept as sufficient the AUSA's oral proffer of facts at the May 4, 2000 contempt hearing because the AUSA was present at the March 7, 2000 grand jury proceeding and was therefore competent to testify as to what occurred there. This argument overlooks the fact that the

---

**3.** As noted *supra,* because we reverse Harris's conviction for insufficiency of evidence, we need not reach his ineffective assistance claim.

**4.** The record does contain an excerpt from the transcript of the December 15, 1998 *D.C. Superior Court* grand jury proceeding establishing Harris's refusal to testify in that proceeding but, even assuming the excerpt constitutes competent evidence, this avails the government nought. The district court's order of conviction expressly found Harris in contempt "for his refusal to testify before the grand jury on March 7, 2000, *in the United States District Court for the District of Columbia."* 1/11/2001 Order at 9 (emphasis added).

AUSA participated in the contempt hearing as a legal advocate for the government and not as a witness. His factual recitation was neither under oath nor subject to cross-examination and cannot be regarded as competent trial testimony. *Cf. Gilliam,* 167 F.3d at 639 (refusing to accept as evidence prosecutor's "inform[ing] the district court that he had a certified copy of a prior conviction" or his "proffer[ ] that Gilliam had prior convictions for armed robbery, robbery, kidnaping, obstruction of justice, assault with a deadly weapon, and carrying a deadly weapon"); *see also Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) ("Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard.").[5]

Because the government failed below to prove that Harris refused to testify at the March 7, 2000 district court grand jury hearing in violation of the court's January 7, 1999 order, Harris's contempt conviction is

*Reversed.*

**5.** The government relies on the Texas Supreme Court's holding in *Banda v. Garcia,* 955 S.W.2d 270 (Tex.1997). In *Banda,* defense counsel attempted to establish the terms of an automobile accident settlement agreement at a hearing through her own description of the terms based on her participation in the settlement. The court concluded that the plaintiff, who "did not, at any time, object to the trial court's failure to administer the oath," "waived any objection he had and [defense counsel's] statements to the court are some evidence of the settlement agreement." 955 S.W.2d at 272. In *Banda,* however, the lawyer made it clear that she intended her statements as testimony. She expressly said to the court: "[A]s an officer of the court I can just state under oath what—what I am telling the court and what my representations were by [sic] [defense counsel] and the understanding I had." *Id.* She also referred at one point to "this agreement that I'm testifying to today before the court as an officer of the court." *Id.* Under those circumstances, the Texas Supreme Court determined that plaintiff's counsel "should have known to object to [defense counsel's] unsworn statements" and that the failure to object constituted waiver. *Id.*