Terrance L. **FUNCHESS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 94–CF–1064.

District of Columbia Court of Appeals.

Submitted May 6, 1996.
Decided May 30, 1996.

---

Janell M. Wolfe, Washington, appointed by the court, filed a brief, for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black, James C. Bohling and Pamela Huff, Assistant United States Attorneys, filed a brief, for appellee.

Before SCHWELB and KING, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

Terrance Funchess was convicted by a jury of unlawful possession of cocaine, in violation of D.C.Code § 33–541(d) (1993). On appeal, he contends that the trial judge erred in denying his motion to suppress tangible evidence. We affirm.

## I.

The evidence at the hearing on Funchess' motion to suppress, viewed in the light most favorable to the prosecution, *see Peay v. United States,* 597 A.2d 1318, 1320 (D.C. 1991) (en banc), established that on the afternoon of June 19, 1992, officers of the Metropolitan Police Department (MPD), working under cover, were in the vicinity of a "carry-out" establishment in southeast Washington, D.C. The police had received complaints that controlled substances were being sold inside and outside the carry-out.

One of the officers, Joseph O'Pharrow, testified that at about 4:50 p.m., near the entrance to the carry-out, he observed an unknown woman approach a man later identified as Gregory Green. The woman handed Green an undetermined amount of paper currency, and Green gave her a small ziplock bag of the kind in which crack cocaine is frequently sold. The woman left. Green walked to the parking lot at the far end of the carry-out. There, he turned and approached Terrance Funchess, the appellant

in this case, who was approximately ten feet away. Green handed Funchess the money which he had just received from the woman.

Suspecting that he had observed a drug transaction and that Green and Funchess were associated with one another in the sale of drugs, O'Pharrow broadcast a lookout for both men and for the woman who was the apparent purchaser. The officers were unable to locate the woman, but Green and Funchess were both promptly apprehended at the carry-out. After Officer O'Pharrow identified the two men, they were both placed under arrest. In a search of Funchess incident to his arrest, officers recovered four ziplock bags of crack cocaine, a beeper, and $112.00 in suspected proceeds of crime. No contraband was recovered from Green.

Green and Funchess were both charged with possession of cocaine with intent to distribute it on the basis of the contraband recovered from Funchess. Each man filed a pretrial motion to suppress tangible evidence. Following an evidentiary hearing, the trial judge denied both motions. The judge held that the officers had probable cause to believe that a drug transaction had taken place and that Green and Funchess were acting in concert with one another in distributing the drugs.

At the ensuing trial, the jury acquitted Green but found Funchess guilty of the lesser included offense of unlawful possession of cocaine. This appeal followed.

## II.

 Whether the officers had probable cause to arrest Funchess is a mixed question of law and fact. *Brown v. United States,* 590 A.2d 1008, 1020 (D.C.1991). In the present case, the facts are essentially undisputed, and we review *de novo* the trial judge's conclusion that the facts, as he found them to be, supported his conclusion that the arrest of Funchess was lawful. *Id.*

 "An officer has probable cause to arrest an individual when he or she has reasonably trustworthy information at the moment of arrest sufficient to warrant a reasonably

prudent [person] in believing that the [suspect has] committed or [is] committing an offense." *Id.* at 1012 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 96, 85 S.Ct. 223, 225, 228, 13 L.Ed.2d 142 (1964) (alteration in original)). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [officers], not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *see also Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar* ).

■ Funchess points to a number of facts which, in his view, tend to defeat probable cause. For example, Funchess did not handle the cocaine. He had no contact with the suspected purchaser, and the officers witnessed no contact between Funchess and Green until Green gave Funchess the money. There is no evidence that Funchess even observed the sale. Although he received money from Green, there is nothing intrinsically unlawful about that. Conceivably, Green might have been repaying a debt, or making a loan or a gift. If Funchess had been placed on trial on the basis of the information available to the officers at the time they arrested him (but before they searched him), an impartial juror would surely have had to entertain a reasonable doubt as to Funchess' complicity in Green's alleged sale to the unidentified woman.

To paraphrase Justice Stewart, writing for the Court in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979),

> [e]ach patron who walked into the [carryout] on [June 19, 1992] was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by [Green].

*Id.* at 91–92, 100 S.Ct. at 342. Even if we assume that Funchess was with Green, "companionship with an offender at the very time of the latter's criminal conduct is not inevitably sufficient to establish probable cause for arrest of the companion." 2 WAYNE R. LA-FAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.6(c), at 310 (3d ed. 1996) (citing *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948)). "Guilt by association without more is not part of our jurisprudence." *McDonald v. State,* 53 Ala.App. 394, 300 So.2d 837, 838 (Crim. App.), *cert. denied,* 293 Ala. 766, 300 So.2d 838 (1974).

In the present case, however, Funchess' arrest was based on a good deal more than his mere "association" with Green. Funchess received the proceeds of the apparent drug sale immediately after the transaction had been completed. Green delivered those proceeds to him in their entirety. Funchess gave Green no change, and Green added no money to the amount which the woman had given him. If Green had been repaying a debt (or, for that matter, making a loan), it would have been quite fortuitous that the precise amount which he was passing on to Funchess was identical to the precise amount the apparent purchaser had paid to Green. The officers were not required to attribute to coincidence the fact that Funchess received the proceeds of the sale—no more and no less—as soon as the sale had been effected. *See, e.g., Poulnot v. District of Columbia,* 608 A.2d 134, 139 (D.C.1992).

Moreover, the officers were aware that drug dealers often elect not to work alone. Officer O'Pharrow, a five-year veteran of the MPD, testified at the suppression hearing that

> it was common for people to pass money off to a third party because it was beginning to become common knowledge that the first thing police will look for will be marked money or a large amount of money for whoever was selling. At that time I thought that Mr. Funchess was holding the money for Mr. Green or that Mr. Green was a runner for Mr. Funchess.[1]

---

1. A police detective who was qualified as an expert witness also testified at trial regarding the roles of "holders" and "runners" in the sale of

drugs. We may properly consider undisputed trial testimony in determining whether Funchess' motion to suppress was properly denied. *See*

The officers' knowledge that drug traffickers often work in teams, and that one person is likely to deal with customers while another holds the money or drugs, strengthened the inference that Funchess' presence, and his immediate receipt of the proceeds of the sale, were not innocent fortuities. Although "the knowledge of trained investigators that drug sales are often conducted in teams [is] not without limitations," *Haywood v. United States,* 584 A.2d 552, 555 (D.C.1990), we cannot expect law enforcement officers to be blind to this reality.

Finally, the officers were aware not only that the neighborhood was known for drug trafficking, but that this particular carry-out had been the site of such activity. We have held, and now reiterate, that "the character of the neighborhood will not, without more, justify an inference of criminal conduct." *Id.* Nevertheless, the obligation to respect the rights of residents of all neighborhoods does not require police officers to ignore the nature of the locale at which an event occurs, especially where, as in this case, that locale is an establishment where drugs are sold.

The carry-out here in question was the subject of numerous complaints of drug dealing. The officers might reasonably expect persons at the carry-out to be aware of that. It was in this context that Funchess received from Green the proceeds of an apparent drug sale immediately after the sale "went down." The trial judge reasonably concluded that the officers had probable cause.

*Affirmed.*

*West v. United States,* 604 A.2d 422, 427 (D.C. 1992). Funchess presented no evidence, and the prosecution testimony regarding the *modus operandi* of drug dealers was uncontradicted.