**Morris T. SHELTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 05–CM–1552.**

District of Columbia Court of Appeals.

Argued April 10, 2007.
Decided July 19, 2007.

Kyle A. McGonigal, appointed by the court, for appellant.

George J. Hazel, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Appellant was found guilty of one count of unlawful possession of a controlled substance (cocaine) in violation of D.C.Code § 48–904.01(d) (2001). He challenges the trial court's denial of his motion to suppress the cocaine evidence on the ground that his Fourth Amendment rights were violated. We hold that, on the facts and circumstances of record, the motion to suppress should have been granted and we reverse appellant's conviction for unlawful possession of a controlled substance.

## I.

At the hearing on appellant's suppression motion, the following facts were developed. Officer Steven Prade has been with the Metropolitan Police Department (MPD) for approximately twelve years, most recently assigned to a Focus Mission Team that "normally target[s] high drug areas within the District." Over the course of his career, Officer Prade has observed an estimated 3,000 drug transactions.

On the evening of November 5, 2004, Officer Prade and his partner were detailed to the 1900 block of Benning Road, N.E., to conduct a plainclothes "buy-bust" drug sting operation supported by an arrest team in separate MPD vehicles. At approximately 7:35 p.m., as Officer Prade drove towards the targeted location, he turned his unmarked police vehicle into a convenience store parking lot at 1830 Benning Road, on the northwest corner of Benning Road and 19th Street, N.E. Officer Prade stopped directly behind a car with two occupants, including a person in the driver's seat later identified as appellant, and immediately observed a man approach appellant's window with United States currency visible in his hand. During a thirty to ninety-second conversation, the man handed the money to appellant and, in a gesture that Officer Prade viewed as "no handshake," appellant appeared to place an unidentified "small object" in the man's hand. The man then walked away and appellant drove his car out of the parking lot. Officer Prade, believing he had witnessed a drug transaction, followed appellant's car and radioed its description to the arrest team with instructions for appellant's arrest.[1] Appellant was stopped and, in a search incident to arrest, officers recovered from appellant's left sock a white piece of paper containing two rocks that later tested positive for cocaine.

Before trial, appellant filed a motion to suppress tangible evidence, i.e., the cocaine, contending that the officers acted without probable cause when they arrested him and thus that the subsequent search, not being incident to a lawful arrest, violated his Fourth Amendment rights. The government conceded that probable cause was required because this was not a mere investigatory stop, but maintained that based on Officer Prade's observations and experience, he had probable cause to order appellant's arrest. The trial court agreed with the government and denied appellant's motion to suppress. Appellant then stipulated that he possessed cocaine and was found guilty by the trial court of unlawful possession of a controlled substance. He was sentenced to twenty days of incarceration.

## II.

▪▪▪▪ The central question in this appeal, the parties agree, is whether Officer Prade had probable cause to believe that an offense had been or was being committed when he ordered the arrest team to intercept and arrest appellant. If we were

---

1. The police never stopped or identified the second man.

to find that Officer Prade had probable cause, then the cocaine found on appellant's person was lawfully recovered pursuant to the "search incident to an arrest" rule. *Davis v. United States*, 781 A.2d 729, 735 (D.C.2001) (citing *Mitchell v. United States*, 746 A.2d 877, 890 (D.C. 2000)).[2] On the other hand, if we conclude—as we do today—that the government's evidence failed to show that under the circumstances Officer Prade had probable cause to order appellant's arrest, then the cocaine was inadmissible as the product of an unreasonable search and seizure in violation of the Fourth Amendment. *See, e.g., Artis v. United States*, 802 A.2d 959, 967–68 (D.C.2002) (citing, among other cases, *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

"In reviewing a trial court order denying a motion to suppress, the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay v. United States*, 597 A.2d 1318, 1320 (D.C.1991) (en banc). "In particular, we must give deference to the trial court's findings of fact as to the circumstances surrounding the appellant's encounter with the police and uphold them unless they are clearly erroneous." *Prince, supra* note 2, 825 A.2d at 931 (citation and internal quotation marks omitted). However, we review *de novo* the trial court's legal conclusions and make our own independent determination of whether there indeed was probable cause to arrest. *Id.*

"Under the Fourth Amendment of the United States Constitution, an offi-cer cannot conduct a warrantless search of a person, absent certain exceptions, without probable cause." *Davis, supra*, 781 A.2d at 734. The test for judging the existence of probable cause is "whether a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience, would be warranted in the belief that an offense has been or is being committed." *Id.* (quotation marks omitted). "The analysis must be guided by practical rather than technical considerations keeping in mind the necessities of the moment and the reasonableness of the officers' actions." *Peterkin v. United States*, 281 A.2d 567, 568 (D.C.1971), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972) (citing *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

Furthermore, we have acknowledged that "[t]he exchange of small objects for currency is an important and sometimes decisive factor in determining the existence of probable cause." *Thompson v. United States*, 745 A.2d 308, 313 (D.C. 2000) (quoting *Tobias v. United States*, 375 A.2d 491, 494 (D.C.1977)). "[I]t is not necessary that the police officer be able to see clearly that the small object being handed from one person to another is contraband," *Prince, supra* note 2, 825 A.2d at 933, or "that all innocent explanations for a person's actions be absent before those actions can provide probable cause for an arrest." *Tobias, supra*, 375 A.2d at 494; *see also Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) ("[S]ufficient probability, not certainty, is

---

2. "There is no requirement that the arresting officer have sufficient firsthand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication ... had firsthand knowledge...." *Prince v. United States*, 825 A.2d 928, 933 (D.C.2003) (quoting *Daniels v. United States*, 129 U.S.App. D.C. 250, 252, 393 F.2d 359, 361 (1968)). "[A] citizen's rights are protected if, at the time of the intrusion, the information collectively known to the police is constitutionally sufficient to justify that intrusion." *Id.* (citations omitted).

the touchstone of reasonableness under the Fourth Amendment. . . .").

■ Nonetheless, in the present case, even viewing the evidence of record in the light most favorable to the government, we are not satisfied that an adequate foundation was developed to show that Officer Prade could reasonably believe that there was a sufficient probability that criminal activity had occurred based on the activities he observed. Before ordering appellant's arrest, Officer Prade saw: (1) appellant sitting in a car in a convenience store parking lot, (2) a pedestrian holding currency approach appellant's driver's side window and give that money to appellant, (3) the pedestrian receive back from appellant some kind of "small object," and (4) both parties depart the scene. Although Officer Prade's suspicions may indeed have been reasonably raised by the conduct he observed to justify a *Terry* stop,[3] we cannot conclude that probable cause existed on the record before us.

At oral argument, counsel for the government identified three analogous two-way-transaction cases that are said to best support a finding of probable cause in the present case: *Peterkin, supra,* 281 A.2d 567; *Tobias, supra,* 375 A.2d 491; and *Coles v. United States,* 682 A.2d 167 (D.C. 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 751, 136 L.Ed.2d 688 (1997). Each of

these cases, however, involved a two-way transaction plus additional suspicious factors that distinguish each case from the present circumstances.[4]

In *Peterkin,* police officers on patrol in a known "high narcotic area" observed one appellant give currency to the other appellant in exchange for "something" out of a plastic medicine vial. 281 A.2d at 567–68. An arresting officer testified that he recognized the vial as being of the type he previously had seen used to transport narcotics. *Id.* at 568. Noting that this was a "borderline situation[ ] regarding probable cause" in which "innocent explanations for the activity may be imagined," this court concluded that the officers had probable cause to arrest the appellants in light of the "unusual" exchange on the street of something from a vial, the use of cash for the transaction, and the character of the neighborhood. *Id.* at 568–69. Unlike the case before us, *Peterkin* thus involved not only a two-way transaction but also involvement of a suspicious vial and testimony that the incident occurred in a high drug area (a factor we discuss in additional detail below).

In *Tobias,* police officers stationed in a neighborhood known for "its high level of narcotics traffic" observed the appellant on two occasions approach people, remove a small object from his shoulder bag, and

3. A police officer who has a "reasonable suspicion based on specific articulable facts that [a] person is involved in criminal activity" may briefly detain that person on less than probable cause and "may conduct a protective search if they have reasonable grounds to believe that the suspect is armed and poses a danger to himself or others." *Reyes v. United States,* 758 A.2d 35, 37–38 (D.C.2000) (citing, among other cases, *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). *But see Duhart v. United States,* 589 A.2d 895, 899 (D.C.1991) ("If the behavior of a suspect is capable of 'too many innocent explanations,' then the intrusion cannot be justi-

fied."). As the government concedes, probable cause was required in this case because appellant was arrested and then searched incident to that arrest.

4. "[T]his court has expressly rejected the idea that any one case sets forth in a precedential fashion the necessary prerequisites for a finding of the existence of probable cause." *Tobias, supra,* 375 A.2d at 493 (citing *Arrington v. United States,* 311 A.2d 838, 839–40 (D.C. 1973)). However, "as factual similarities become apparent in precedent, the court may look to such precedent for guidance." *Id.*

exchange the object for an undetermined amount of currency. 375 A.2d at 492. The officers followed the appellant and watched as he removed another object from his shoulder bag and approached a third group of people, who warned him that the officers were behind him; appellant then placed the object back in his shoulder bag and began to walk away. *Id.* When officers identified themselves, the appellant fled and was caught in a foot pursuit. *Id.* In finding that the officers had probable cause to arrest the appellant, this court noted that in addition to the exchange of small items for currency, the case involved "an area noted for narcotics trafficking," an attempt by appellant to conceal the object he was holding in his shoulder bag, and an attempt to flee the police—three factors not present in the instant case. *See id.* at 494.

In *Coles,* a police officer observed appellant give another person currency in exchange for a zipper-seal plastic bag "which the latter retrieved from an apparent stash in a nearby tree-box space." 682 A.2d at 168. In concluding that the officer had probable cause to believe that the two-way transaction he had witnessed was an exchange of drugs for money, this court noted that the officer's observations were consistent with "the conventional packaging of drugs and the common stashing of them in places like the tree-box space involved here." *Id.* The present case, in contrast, involved neither recognizable drug packaging nor stash locations.

Beyond the cases principally relied upon by the government, we have had many other two-way transaction cases in which we also relied on additional contextual factors to support a finding of probable cause. *See, e.g., Prince, supra* note 2, 825 A.2d at 933 (finding probable cause where officers in a known "high narcotics area" observed a man approach a car and hand appellant a "small object" in exchange for currency and where the officers previously had observed the same man approach "at least one other car in the same suspicious manner"); *Davis, supra,* 781 A.2d at 735–36 (finding probable cause where officers in a known "high narcotics area" recognized a woman holding currency in her hand on the basis of past complaints of "illegal activity"; saw appellant display something in his hand to this woman; and saw the man ball-up his hand, put its contents into his pocket, and begin to walk away when the officers approached); *Thompson, supra,* 745 A.2d at 314–15 (finding probable cause where officers conducting surveillance in an area that had been the subject of "ongoing complaints about drug activity" saw a man sell to several persons objects that he retrieved from a stash location in a nearby alley, the man give a similarly-retrieved object to one of the appellants in exchange for currency, and that appellant then hand the object to the second appellant as officers approached); *Funchess v. United States,* 677 A.2d 1019, 1022 (D.C.1996) (finding probable cause where officers working undercover near a convenience store that had been the subject of drug complaints saw a man give a woman a small ziplock bag in exchange for currency, which the man immediately took across the parking lot and handed to appellant).

In contrast to all the aforementioned cases, the instant case involves a two-way transaction on a record otherwise devoid of suspicious circumstances and where the observed transaction is capable of numerous innocent explanations. Officer Prade observed the transaction immediately upon entering the parking lot and received no insight from events occurring before the transaction. Officer Prade did not know or recognize either of the subjects as participants in past criminal activity. Officer Prade did not see appellant retrieve the

"small object" from a suspicious container or location. And immediately after the transaction, appellant and the pedestrian left the scene and Officer Prade ordered appellant's arrest; no conduct subsequent to the transaction—such as any attempt to flee or conceal contraband—entered into the probable cause analysis.

On appeal, the government urges us to consider one additional factor by drawing an inference that Officer Prade's judgment was informed by the fact that this incident occurred in a "high drug area." Indeed, at oral argument, counsel for the government deemed this a "critical determination" and "a critical factor for a finding on behalf of the government," conceding: "If you factor out the high drug area, I do not think it would be probable cause." In addition, the government conceded that no evidence directly established that the incident occurred in a high drug area, acknowledging that "the record is imperfect and that's frankly the government's fault," that "more questions should've been asked here," and that "[t]here are some inferences that have to be made," but that these inferences "are rightly made in the government's favor in this case based on the record as it stands."

■■■■■■ Generally, whether an area is known for high narcotics activity is a factor relevant to the assessment of probable cause and the reasonableness of the police officer's response. *See Price v. United States,* 429 A.2d 514, 518 (D.C.1981); *Peterkin, supra,* 281 A.2d at 568 n. 4. "[T]he obligation to respect the rights of residents of all neighborhoods does not require police officers to ignore the nature of the locale at which an event occurs...." *Funchess, supra,* 677 A.2d at 1022. However, "[t]he fact that the events ... took place at or near an allegedly 'high narcotics activity' area does not objectively lend any sinister connotation to facts that are inno-

cent on their face." *Smith v. United States,* 558 A.2d 312, 316 (D.C.1989) (en banc) (citations omitted). "[T]his familiar talismanic litany, without a great deal more, cannot support an inference that appellant was engaged in criminal conduct." *Id.* (citations omitted).

In this case, we need not decide precisely what value to ascribe to the fact that the incident occurred in a high drug area because we conclude that the record does not sufficiently support the drawing of such an inference. No witness explicitly testified that the convenience store parking lot, nor for that matter the area surrounding the parking lot, was a "high drug area." *Cf. Funchess, supra,* 677 A.2d at 1022 ("[T]he officers were aware not only that the neighborhood was known for drug trafficking, but that this particular carry-out had been the site of such activity."); *see also United States v. White,* 211 U.S.App. D.C. 72, 74, 655 F.2d 1302, 1304 (1981) ("That sellers and users congregate in a certain area is proved by the great number of narcotics arrests that occur there and that result in eventual convictions."). What was established was that Officer Prade's Focus Mission Team "normally target[s] high drug areas within the District," that on this particular evening the team was targeting the 1900 block of Benning Road, N.E., and that "on [his] way" to the targeted location, Officer Prade stopped and observed the transaction in the parking lot at 1830 Benning Road (on the opposite side of 19th Street from the 1900 block of Benning Road).

The closest that any testimony came to labeling the convenience store parking lot as a "high drug area" was the testimony of Office Prade, in response to a question about when the pedestrian approached appellant's vehicle, that "I don't know how long the white vehicle had been there because [we] were sent into that location to

do a buy-bust operation. So once we pulled into that location, then the unknown black male walked up." To read "location" as the parking lot somewhat contradicts the indication that he pulled into the parking lot "on [his] way" to the targeted location, which had been identified as the "1900 block of Benning Road, N.E." Moreover, even if the inference could be made that the convenience store was within the targeted location, the further inference would have to be made that since "normally" the Focus Mission Team targets high drug areas, this particular parking lot was a high drug area. We think this is requiring too much of inferences to support probable cause in this case.

Furthermore, any inference that can be drawn from the scanty evidence presented is at best vague and imprecise. As indicated, the extent of the "high drug area" is unclear. No evidence was presented to indicate why this convenience store parking lot might be suspected as a site of drug dealing. Moreover, the basis for the Focus Mission Team to suspect drug dealing in the "1900 block of Benning Road" is unknown, as is whether that suspicion was focused on a particular area of that block or more generally suspected. Where the government is placing such heavy reliance on the fact that the place where the suspected transaction took place was a "high drug area," that fact must be shown with sufficient particularity to justify such reliance. As the government acknowledges, the need for any inferences could have been obviated by more precise questioning of the witnesses in this case.[5]

In sum, we conclude that the evidence that the parking lot was a "high drug area" is too thin to support the finding of probable cause. In light of the centrality of the cocaine evidence to the question of appellant's guilt in this case, we are unable to conclude that the erroneous admission of the evidence was harmless beyond a reasonable doubt. *See Morten v. United States,* 856 A.2d 595, 600–01 (D.C.2004) (citing *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Chambers v. Maroney,* 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (applying constitutional error standard to admission of evidence seized in violation of the Fourth Amendment). Accordingly, the judgment of conviction is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

5. The government stresses the fact that Officer Prade was experienced in observing drug transactions. Such experience is certainly to be respected; however, the officer here said nothing about what feature(s) of this transaction distinguished it in his mind from one that is entirely innocent. Although Officer Prade testified that the duration of the encounter between appellant and the unidentified pedestrian was more consistent with what he would expect of a drug transaction between strangers (typically lasting ten to thirty seconds) than a drug transaction between friends or acquaintances (typically lasting three to five minutes), his testimony that this transaction took thirty to ninety seconds did not clearly place the event into either category. Moreover, this testimony served only to distinguish two kinds of drug transactions and not a drug transaction from entirely innocent conduct.