*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CM-985

THOMAS M. BUTLER, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-7070-10)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued October 25, 2012                    Decided November 6, 2014)

*Thomas T. Heslep* for appellant.

*Trevor McFadden*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, *Roy W. McLeese III*, Assistant United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Benjamin Eisman*, and *Katherine A. Sawyer*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

Opinion for the court by *Associate Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Associate Judge* BECKWITH at page 13.

BLACKBURNE-RIGSBY, *Associate Judge*:  Following a jury trial, appellant Thomas Butler was convicted of two counts of unlawful possession of a controlled substance (marijuana and amphetamine), in violation of D.C. Code § 48-904.01 (d) (2012 Repl.).[1]  On appeal, appellant argues that the trial court erred in denying his motion to suppress the drugs found on his person because the police lacked probable cause to arrest him and could not search him incident to arrest based solely on the smell of marijuana emanating from his vehicle.  Citing primarily *Minnick v. United States*, 607 A.2d 519 (D.C. 1992), the government argues that the identifiable aroma of a drug by itself provides probable cause to arrest and search an individual.  While we are not persuaded by the government's argument, and recognize that with the passage of the Marijuana Possession Decriminalization Amendment Act of 2014, effective July 17, 2014, *see* D.C. Council, Act 20-305 (Mar. 31, 2014), the calculus of probable cause in future cases such as this may change, we nonetheless conclude — albeit not without some pause — that the arrest and subsequent search of appellant in this case was not unconstitutional. Accordingly, we affirm.

---

[1]  Appellant was initially indicted with one count of possession with intent to distribute amphetamine, *see* D.C. Code § 48-904.01 (a)(1), but the jury found him guilty of the lesser-included offense of possession.

# I.    Factual Background

At the suppression hearing, Metropolitan Police Department Officer David Boarman testified that at approximately 7:09 p.m. on April 21, 2010, he was driving his marked patrol vehicle on the 2300 block of Benning Road, Northeast, Washington, D.C., when he noticed broken rear brake lights on the vehicle that appellant was driving, and subsequently initiated a traffic stop. The officer approached the passenger side of the vehicle, advised appellant of the reason for the traffic stop, and asked for his license, registration, and proof of insurance. During this interaction in which the passenger side window was lowered, Officer Boarman, who has been exposed to marijuana several hundred times, identified the strong odor of "fresh" marijuana coming from inside the vehicle. When the officer informed appellant of the smell, appellant, who was alone, replied:  "Man, you don't smell no weed in here"; "Man, you can search the vehicle"; and "You can smell my fingers if you want to." In response, Officer Boarman asked appellant to step outside of the vehicle, brought him to the back of the vehicle, and "started conducting a search of him."

During this search, the officer in addition detected the smell of marijuana emanating from appellant's clothing — most notably his jacket — to which

appellant claimed that he did not own the jacket, and that the person who owned the jacket had been smoking. When the officer pulled up appellant's left pant leg, he saw wedged between the sock and shoe a clear plastic bag containing a quantity of pills (later identified as amphetamine) and directly underneath, another clear bag, containing a "brown, green, weed-like substance," which field tested positive for marijuana. Following this search, Officer Boarman handcuffed appellant and searched the vehicle for more drugs, although none was ultimately found. On cross-examination, Officer Boarman confirmed that the smell of marijuana may "linger" in a closed space, and that it was "possible" any clothing confined in the closed space will then smell like marijuana.[2]

During arguments on the motion to suppress, the government maintained that the search was lawful on the basis that "[u]nder well-established D.C. law, the plain smell of narcotics provides probable cause to conduct a search of a defendant's person, [and] that's what occurred here." When the trial court asked if the government "rel[ied] at all on the issue of consent," the government said "[n]o." Appellant's trial counsel retorted that the cases he read "all had to do with

_____

[2] Appellant testified on his own behalf. His testimony was mostly consistent with Officer Boarman's, except he insisted that his brake lights were working and he denied giving the officer permission to search his vehicle. He also testified that the sealed plastic bag was located under his foot, not merely wedged between his sock and shoe, and that the officer had to take his shoe off to find it.

searching the car and not . . . the person[,]" and that this court had not "reached [a decision] [o]n search[ing] [] a person [based] on probable cause just from a smell." The trial court credited Officer Boarman's testimony and denied appellant's motion on two grounds. First, the officer "had probable cause to conduct the search" of appellant's person based on "the smelling of the marijuana coming from the vehicle" and "the marijuana continuing to emanate from the defendant himself."[3] Second, when appellant told the officer that he could search the car, "as far as this [c]ourt is concerned, that was consent to search the defendant and to search the car."[4] Appellant's case proceeded to trial, where he was found guilty of two counts of possession. This appeal followed.

## II.    Discussion

On appeal, appellant argues that the trial court should have suppressed the drugs found on his person because the police lacked probable cause to arrest him,

---

[3] Neither the government nor the trial court specified what exception to the Fourth Amendment permitted the search under this theory. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971).

[4] This theory, which the government did not argue in the trial court and has not argued on appeal, is foreclosed by the Supreme Court's decision in *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.").

and conducted an evidentiary search in violation of the Fourth Amendment.[5] Abandoning its position in the trial court that the smell of marijuana provided probable cause to search appellant's person, the government now argues on appeal that the smell of marijuana alone provides probable cause to *arrest* appellant, which then gave the police authority to search him under the search-incident-to-arrest exception.

### A.  Standard of Review

In reviewing the denial of a motion to suppress, this court must uphold the trial court's findings of fact unless clearly erroneous and view all facts and reasonable inferences in the light most favorable to the government.  *See Prince v. United States*, 825 A.2d 928, 931 (D.C. 2003).  However, we make a *de novo*, "independent determination of whether there . . . was probable cause to arrest." *Shelton v. United States*, 929 A.2d 420, 423 (D.C. 2007).  The government bears the burden of establishing probable cause.  *See Brown v. United States*, 590 A.2d 1008, 1013 (D.C. 1991).  Thus, if the evidence fails to demonstrate probable cause to arrest at the time of the search, the seized contraband is suppressed "as the

---

[5]  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

product of an unreasonable search and seizure in violation of the Fourth Amendment." *Shelton*, *supra*, 929 A.2d at 423.  That said, "[a] search incident to arrest may precede the actual arrest if probable cause exists, independent of the search, to justify the arrest, and if the arrest follows 'quickly on the heels' of the search."[6] *Millet v. United States*, 977 A.2d 932, 935 (D.C. 2009).

Probable cause to arrest "exists where the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man or woman of reasonable caution in the belief that an offense has been or is being committed." *Spinner v. United States*, 618 A.2d 176, 178 (D.C. 1992) (citation, internal quotation marks, and other punctuation omitted).  "To this it is added that probable cause must be 'particularized' with respect to the person to be searched or seized." *Perkins v.*

---

[6] Appellant appears to challenge our case law holding that an officer may first search a suspect before arresting him or her by contending that "a fiction is created that [the officer] ha[s] arrested a person when they search him."  However, as stated above, a search may precede an actual arrest only when there is probable cause to arrest at the time of the search and an arrest follows "quickly on the heels" of the search.  Therefore, contrary to appellant's claim, our case law does not approve — and indeed actively guards against — "fishing expeditions" for contraband.  Notably, in a recent decision by this court, *United States v. Nash*, -- A.3d --, Nos. 13-CO-1299 & 13-CO-1456, slip op at *25 (Sep. 25, 2014), we confirmed that a search incident to arrest is lawful even if, at the time of the search, the police had not yet arrested the suspect and did not subjectively intend to do so.  Contrary to our dissenting colleague's view, the majority is in accord with *Nash*'s holding and reasoning for doing so.

*United States*, 936 A.2d 303, 306 (D.C. 2007). While "it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause[,]" *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)), in evaluating whether this standard has been met, we keep in mind the fundamental principle that "[t]he history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice." *Wong Sun v. United States*, 371 U.S. 471, 483 (1963) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

### B. Probable Cause to Arrest versus Probable Cause to Search

Preliminarily, we address the government's argument that this court has previously already held that the identifiable smell of a drug by itself provides probable cause to arrest and search an individual. In support of this claim, the government cites to our decisions in *Wilson v. United States*, 802 A.2d 367 (D.C. 2002) and *Minnick*. Plainly, *Wilson* is not on all fours because the police in that case detected "a really strong odor of PCP" *and* saw tin foils consistent with PCP packaging before arresting the suspects for possession. *Id.* at 372. Likewise, *Minnick*'s holding pertained to a related but ultimately different inquiry, i.e., "that

a police officer who smells the identifiable aroma of contraband drug emanating from a car has probable cause to believe that the car contains a quantity of that drug[,]" 607 A.2d at 525, and can thus search the car and any containers therein under the automobile exception to the warrant requirement.[7]

Nor is our decision here in the probable cause to arrest context automatically required by *Minnick*'s holding regarding probable cause to search, even if it is persuasive authority regarding a search. Despite their shared origins, probable cause to arrest and probable cause to search present different questions and have a different emphasis. *See United States v. Gilliam*, 334 U.S. App. D.C. 391, 396, 167 F.3d 628, 633 (1999). Indeed, other courts considering exactly this issue have concluded that the two inquiries are distinct.[8] While generally the same "quantum

---

[7] While the court in *Minnick* did note in a footnote that the search "may also be sustained as incident to a lawful arrest[,]" 607 A.2d at 525, this observation was "unnecessary to our affirmance of the conviction," *see Heard v. United States*, 121 U.S. App. D.C. 37, 38, 348 F.2d 43, 44 n.3 (1964), and therefore dictum. *See, e.g.*, *Parker v. K & L Gates, LLP*, 76 A.3d 859, 873 (D.C. 2013) ("[F]or purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that — as this court and others have repeatedly held — are 'necessary' to explain the outcome; other observations are dicta.").

[8] *See State v. Reed*, 712 So. 2d 458, 569 (Fla. 1998) (noting the difference between a probable cause to arrest and probable cause to search analysis); *Edmond v. State*, 951 N.E.2d 585, 591 (Ind. App. Ct. 2011) (same); *State v. Secrist*, 589 N.W.2d 387, 391 (Wis. 1999) (same).

of evidence" is required for either inquiry, *see, e.g.*, *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996), "[e]ach requires a showing of probabilities as to somewhat different facts and circumstances — a point seldom made explicit in the appellate cases." 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1 (b), at 6-7 (5th ed. 2012). "Probable cause to search exists where in view of the 'totality of the circumstances,' 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Gilliam*, *supra*, 334 U.S. App. D.C. at 396, 167 F.3d at 633 (quoting *Gates*, *supra*, 462 U.S. at 239). Contrastingly, the inquiry for probable cause to *arrest* is whether "'the facts and circumstances' within a law enforcement officer's knowledge are 'sufficient to warrant a prudent [police officer] in believing that [the suspects] had committed or [were] committing an offense.'" *Id.* (alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Maryland v. Pringle*, U.S. 366, 371 (2003). "This distinction is a critical one . . . [and] there may be probable cause to search without probable cause to arrest, and vice-versa." 2 LaFave, Search and Seizure § 3.1 (b) at 12.

Consequently, unlike in *Minnick*, the legality of the search in this case cannot simply turn on whether the officer identified the smell of marijuana "generally" emanating from appellant's vehicle — which indisputably would allow

the police to search the *vehicle* for contraband — but rather on whether the facts and circumstances within Officer Boarman's knowledge at the time gave him "reasonable grounds to believe . . . that a felony ha[d] been committed by the person to be arrested[,]" *id.* at 9, i.e., a *particularized* belief that appellant committed a drug-related crime at the time of arrest and search. While we do not dispute that "in appropriate circumstances, odor may serve as the basis or the principal basis for probable cause to arrest[,] . . . the officer [must] be able to link the unmistakable odor of marijuana . . . to a specific person or persons. The linkage must be reasonable and capable of articulation." *Secrist*, *supra* note 8, 589 N.W.2d at 394 (citations omitted).

### C. The Probable Cause to Arrest Inquiry

Here, if the government had presented only evidence that the officer smelled marijuana generally emanating from appellant's vehicle, we would have reservations in upholding the legality of appellant's subsequent arrest and search. *See, e.g.*, *Reed*, *supra* note 8, 712 So. 2d at 460 ("[H]ad the smell emanated solely from the [marijuana-laced] cigar[,] . . . the search of [appellant's] person would

have rested on perilous probable cause grounds.").[9]  However, there were two additional factors in this case that provided Officer Boarman with sufficient particularized justification to arrest appellant for a drug offense and search him incident thereto.  First, appellant was the sole occupant of the vehicle, thus making it more likely that any marijuana present was either on his person or within his exclusive control.  *See, e.g.*, *Ruckus v. United States*, 455 A.2d 889, 891 (D.C. 1983) ("An individual has constructive possession of narcotics when he is knowingly in a position to or has a right to exercise dominion and control over them, either directly or through others.").  Second, Officer Boarman testified that — based on his extensive experience in detecting marijuana — the aroma was of *fresh* marijuana.  In our view, this makes it more likely that appellant was presently in possession of marijuana.[10]  *See, e.g.*, *Perkins*, *supra*, 936 A.2d at 306 (analogizing the probable cause standard to the "reasonable probability" standard). We find persuasive the Wisconsin Supreme Court's reasoning in *Secrist*:  "The strong odor of marijuana in an automobile will normally provide probable cause to

---

[9]  The fact that appellant's jacket also smelled of marijuana does not factor into our probable cause calculus because the officer noticed the smell only after the search had already begun.  *See Millet*, *supra*, 977 A.2d at 935 ("A search incident to arrest may precede the actual arrest if probable cause exists, *independent of the search*, to justify the arrest . . . ." (emphasis added)).

[10]  That being said, we take no position on whether or not probable cause to arrest would have existed in this case if the aroma was of burnt, rather than fresh, marijuana.

believe that the driver and sole occupant of the vehicle is linked to the drug.  The probability diminishes if the odor is not strong or recent, if the source of the odor is not near the person, if there are several people in the vehicle, or if a person offers a reasonable explanation for the odor."  589 N.W.2d at 395.  For these reasons, Officer Boarman had probable cause to reasonably believe that appellant had committed a drug-related offense at the time of the arrest and search.

### III.    Conclusion

Accordingly, the arrest of appellant and search incident thereto was lawful, and the trial court did not err in denying appellant's motion to suppress. Appellant's convictions are hereby

*Affirmed.*

BECKWITH, *Associate Judge*, dissenting.   After pulling over appellant Thomas Butler for having broken brake lights, a police officer stepped Mr. Butler out of the car and promptly "started conducting a search" of him from shoulder to toe "[b]ecause of the odor of marijuana coming from the vehicle."  On appeal from his convictions for possessing the drugs that police found in Mr. Butler's shoe, Mr.

Butler argues (in addition to contending that police had no probable cause to arrest) that the officer conducted "a simple evidentiary search, unconnected to an arrest" when the officer searched his person, and that the government cannot justify this search under the exception to the Fourth Amendment's warrant requirement upon which it relies—that for searches incident to lawful arrest.

In that vein, the majority states, and I agree, that "our case law does not approve—and indeed actively guards against—'fishing expeditions' for contraband." *Ante* at 7 n.6. Yet in the next sentence, the majority expresses agreement with the seemingly opposite conclusion, recently drawn by another panel of this court, that "a search incident to arrest is lawful even if, at the time of the search, the police had not yet arrested the suspect *and did not subjectively intend to do so*." *Ante* at 7 n.6 (emphasis added) (citing *United States v. Nash,* -- A.3d --, Nos. 13-CO-1299 & 13-CO-1456 (Sept. 25, 2014)). Such a conclusion flatly defies the U.S. Supreme Court's Fourth Amendment jurisprudence, including precedent, such as *Knowles v. Iowa*, 525 U.S. 113 (1998), in which the fact that an officer did not intend to arrest a suspect was what made a purported search incident to arrest illegal. *See id.* at 117.

In the search-incident-to-arrest context, the Supreme Court has guarded

against such investigatory searches by insisting on the "fact" of an arrest. *Knowles*, 525 U.S. at 117 (quoting *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973)). In this case, where the arresting officer testified that he "just directly went looking for marijuana" after smelling marijuana and getting Mr. Butler out of the car, I would reverse Mr. Butler's convictions on the ground that the search of his person was not incident to any arrest. That is, the record is devoid of signs that the officer was arresting Mr. Butler for possession of marijuana when he conducted the search and instead indicates that he was conducting an investigative search not incident to any arrest.

Supreme Court case law establishes that under the search-incident-to-arrest exception to the warrant requirement, the government needs more than just probable cause to arrest. It needs an arrest. In the foundational search-incident-to-arrest case of *Chimel v. California*, 395 U.S. 752, 763 (1969), the Supreme Court found it "reasonable for the arresting officer to search the person arrested" for two reasons: "to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape" and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Four years later in *Robinson*, 414 U.S. at 235, the Supreme Court clarified that "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need

to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." That is because "it is the fact of custodial arrest which gives rise to the authority to search," *id.* at 236,[1] and "[i]t is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the case of the relatively fleeting contact resulting from the typical *Terry*-type stop." *Id.* at 234-35.[2]

In *Knowles v. Iowa*, 525 U.S. at 118-19, the Supreme Court unanimously

---

[1] The *Robinson* Court identified an additional reason—the unique intrusiveness of arrests—for linking searches incident to arrest to the actual fact of arrest: "An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons . . . . An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." *Robinson*, 414 U.S. at 228 (quoting *Terry*, 392 U.S. at 26). Thus the *Robinson* Court located the pivotal Fourth Amendment moment in the arrest itself, not its incidental search: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 235.

[2] *See also Washington v. Chrisman*, 455 U.S. 1, 7 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer."); *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) ("Where there is no formal arrest, as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence on his person."); *Holt v. United States*, 675 A.2d 474, 481 (D.C. 1996).

reaffirmed *Robinson*'s reasoning and declined to "extend" *Robinson*'s "bright-line rule" to searches incident to a non-arrest. In *Knowles*, a police officer stopped Patrick Knowles for speeding. Iowa law permitted the officer either to arrest Mr. Knowles or to issue him a citation, and the officer followed "the far more usual practice of issuing a citation," and then, as allowed under Iowa law, searched the car "incident to citation," finding drugs and drug paraphernalia. *Id.* at 115. The Iowa Supreme Court affirmed Mr. Knowles's convictions, "reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest." *Id.* at 115-16. Rejecting this position, the U.S. Supreme Court insisted on the "fact" of arrest, "recogniz[ing] that '[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest.'" *Id.* at 117 (quoting *Robinson*, 414 U.S. at 234 n.5). "The threat to officer safety from issuing a traffic citation," the Court explained, "is a good deal less than in the case of a custodial arrest."[3] *Id.* Under *Knowles*, then, the search-incident-to-arrest exception is rooted in the existence of an arrest—in *Robinson*'s phrasing, "the fact

---

[3] The Supreme Court affirmed this reasoning in *Virginia v. Moore*, 553 U.S. 164, 177 (2008), stating that a search incident to arrest "enables officers to safeguard evidence, and, most critically, to ensure their safety during 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station,'" *id.* (quoting *Robinson*, 414 U.S. at 234-35), and further stating that because "[o]fficers issuing citations do not face the same danger," under *Knowles*, "they do not have the same authority to search," *id.*

of custodial arrest," 414 U.S. at 236—not in the existence of probable cause to arrest. *See also In re J.O.R.*, 820 A.2d 546, 547-48 (D.C. 2003) (upholding the search of J.O.R's coat pockets as "valid under *Robinson*," even though police were taking J.O.R. into custody under a neglect order and not for a crime, because the danger to police officers "flows from their prolonged exposure . . . while taking the person into custody and transporting him, and not from the ground for the arrest").

In this case, the government cannot reconcile with *Knowles* and *Robinson* its assertion that "[b]ecause there was probable cause to arrest appellant, Officer Boarman's search was lawful."[4] Rather than being "incident to" Mr. Butler's later arrest, the officer's search of Mr. Butler had all the hallmarks of a warrantless investigative search,[5] which is just how the officer characterized it. Officer

---

[4] The government bears the burden to justify the search "based on facts that could bring it within certain recognized, limited exceptions to the warrant requirement." *Bennett v. United States*, 26 A.3d 745, 751 (D.C. 2011) (internal quotation marks and citation omitted).

[5] This case thus differs from previous cases upholding searches as incident to lawful arrest. *See, e.g.*, *Prince v. United States*, 825 A.2d 928, 930 (D.C. 2003) (pre-search, officer felt "the texture of the marijuana" in appellant's pocket during *Terry* frisk); *Hill v. United States*, 627 A.2d 975, 978 (D.C. 1993) (pre-search, "Hill was not merely 'detained' but had actually been 'seized' and was under arrest"); *Irby v. United States*, 342 A.2d 33, 37 (D.C. 1975) (pre-search, appellants were "effectively under arrest when they were ordered from the car at gunpoint," after officers had seen "reported proceeds of the robbery" in plain view). See also the discussion *infra* of *Millet v. United States,* 977 A.2d 932, 934 (D.C. 2009) (pre-

(continued…)

Boarman "just directly went looking for marijuana" after getting Mr. Butler out of the car, and when the prosecutor asked him to explain why he started to search Mr. Butler, he responded that he did so "[b]ecause of the odor of marijuana coming from the vehicle." That Officer Boarman acknowledged that the clothing of a person in the presence of marijuana might come to smell like marijuana also is at odds with the government's suggestion that the police were determined, pre-search, to arrest Mr. Butler based on the smell of marijuana. And a *second* search Officer Boarman described—a search during which the officer "did eventually take [Mr. Butler's] shoes off on the scene, to just make sure there was no more narcotics shoved down in his shoes"—looks like a classic *Chimel*-style search incident to arrest, in contrast to the initial search that yielded the drugs.

The government correctly notes that a valid search incident to arrest may at times precede the actual arrest. In *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), the Supreme Court held that "[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person," it was not "particularly

---

(…continued)
search, officer "told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag").

important that the search preceded the arrest rather than vice versa."[6]

Mr. Rawlings had received *Miranda* warnings and then confessed to possessing drugs found in his companion's purse. *Id.* at 100-01. The police, who by that point had detained Mr. Rawlings for 45 minutes, searched his person and "then placed [him] under formal arrest." *Id.* at 101. Unlike Mr. Butler's arrest, Mr. Rawlings's arrest was already in the works at the time of the search, and only his "formal arrest" followed. *Id.* at 111; *see also State v. Funkhouser*, 782 A.2d 387, 408 (Md. App. 2001) (seeking "an arrest already in motion"). The *Rawlings* Court cited *Cupp v. Murphy*, 412 U.S. 291 (1973), where, as the Court explained, "the police had probable cause to make an arrest" at the time of the challenged search, 412 U.S. at 293, but did not arrest the suspect until a month later. The Court upheld a "very limited search necessary to preserve the highly evanescent evidence," *id.* at 296—dried blood under a murder suspect's fingernails that he was

---

[6] *See Anderson v. State*, 553 A.2d 1296, 1301 (Md. App. 1989) ("There will be occasions when the arresting officer deems it tactically unwise to lose critical seconds or even to be momentarily distracted from his overriding necessity of 'beating his opponent to the draw.' Under the circumstances, it would exalt form over substance to the point of absurdity to insist that an officer clap his hand upon an arrestee's shoulder and say the operative words, 'You are under arrest,' before disarming and/or neutralizing a potentially dangerous target.").

scratching off[7]—but cautioned that "we do not hold that a full *Chimel* search would have been justified in this case without a formal arrest and without a warrant." *Id.* at 296. *Cupp*, like *Knowles*, indicates that for police to search incident to arrest, it is not enough for the suspect merely to be "arrestable."[8]

---

[7] In *Cupp*, when the suspect refused to give a sample and then attempted to destroy the blood, the police scraped his fingernails without his consent or a warrant. 412 U.S. at 292-94. The Court has since understood *Cupp* as a case involving the "imminent destruction of evidence," consistent with the view that probable cause to arrest does not entitle police to search without an arrest or some additional exigency. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1559 (2013).

[8] For state court holdings that, like *Knowles v. Iowa*, reject the "reasoning that so long as the arresting officer had probable cause to make a custodial arrest, there need not in fact have been a custodial arrest," 525 U.S. at 115-16, see *Commonwealth v. Craan*, 13 N.E.3d 569, 469 Mass. 24 (Mass. 2014) ("Where no arrest is underway, the rationales underlying the exception do not apply with equal force. . . . .Given that it lacked the critical element of an arrest, the search of the defendant's vehicle cannot be sustained as a search incident to arrest."); *Commonwealth v. Washington*, 869 N.E.2d 605, 611-12 (Mass. 2007) ("To permit a search incident to arrest where the suspect is not arrested until much later, or is never arrested, would sever this exception completely from its justifications" and "would, in effect, create a wholly new exception for a 'search incident to probable cause to arrest.' This we decline to do."); *Belote v. State*, 981 A.2d 1247, 1252 (Md. 2009) ("[T]he fact that a police officer conducts a *Terry* stop and has probable cause, without more, is not sufficient to give rise to a custodial arrest," so as to trigger the search-incident-to-arrest exception.); *People v. Evans*, 371 N.E.2d 528, 531 (N.Y. 1977) ("[T]he police may not utilize the existence of probable cause as a trump card to justify warrantless personal searches. Unless and until a person is arrested, a full body search without a warrant or exceptional circumstances is constitutionally unreasonable."); *State v. Ingram*, 331 S.W.3d 746, 758 (Tenn. 2011) ("It is not sufficient that an arrest *could* have been made; the arrest *must* have been made roughly contemporaneously to the search in order for it to justify the search as incident to an arrest."); *Lovelace v. Commonwealth*, 522 S.E.2d 856, 860 (Va. 1999) (rejecting "the Commonwealth's argument that the

(continued…)

Rescinding this historical rule turns the search-incident-to-arrest exception into a search-incident-to-probable-cause-to-arrest exception, disregarding the Supreme Court's repeated pronouncements describing warrant exceptions as "specifically established," "well delineated," and "jealously and carefully drawn." *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971) (internal quotation marks and citations omitted). It also expands police authority to perform investigative searches.[9]

Given the Supreme Court's precedent, I would not interpret either of two statements in our prior decision in *Millet v. United States*, 977 A.2d 932 (D.C. 2009)—specifically, (1) that "[t]he validity of the search depended not on the officer's subjective motivations, but rather on whether there were objective facts establishing probable cause to believe that Millet had committed or was committing a crime," *id.* at 937 n.6; or (2) that "the fact that the police searched Millet before formally placing him under arrest did not require the court to

---

(…continued)

existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed Womack to search him"); *State v. O'Neill*, 62 P.3d 489, 501 (Wash. 2003) (stating, in state constitutional holding, that "it is the arrest, not probable cause to arrest, that constitutes the necessary authority of law for a search incident to arrest").

[9] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (permitting police to arrest for "even a very minor criminal offense" such as not buckling up).

suppress the fruits of the search if the officers had probable cause to arrest him independent of the search itself," *id*. at 935-36—to mean that the government need only show probable cause to arrest, and not also an actual arrest to which the search was "incident," to justify the warrantless search. As the majority notes, however, this court recently determined, in a case that arose on a government appeal after Mr. Butler's case was argued, that a purported holding in a footnote in *Millet* compelled it to reach just such a result, in direct tension, in my view, with *Knowles*'s core holding that a valid search incident to arrest requires not just probable cause to arrest, but an actual arrest. *See United States v. Nash*, *supra*, -- A.3d --, Nos. 13-CO-1299 & 13-CO-1456 (Sept. 25, 2014). The panel in *Nash* faced a claim that a search of a car was not a lawful search incident to arrest because, at the time of the search, the police had no intention of making an arrest.[10] *Nash,* slip op. at 19-20. Concluding that "*Millet* is controlling here," the *Nash* court held that "the search of [appellant's car] was a lawful incident of the arrest of [the passenger], even if, at the time of the search, the officers had not yet arrested [the passenger] and did not intend to do so." *Nash,* slip op. at 25.

---

[10]    Referring to *Millet, Nash* stated that "[t]he court there confronted precisely the claim raised by [appellant]—that a search cannot be incident to an arrest if, at the time of the search, the officers have not yet made an arrest and do not intend to make an arrest. The court disagreed, holding that it did not matter whether the officers intended to make an arrest. *Millet* requires us to reach the same conclusion in [appellant's] case." *Id*. at 25.

*Millet* cannot have intended a holding that so offhandedly brings such a fundamental change to the law governing the search-incident-to-arrest exception to the warrant requirement. The court in *Nash* acknowledged that "*Millet's* discussion of the question is compressed," that "more could be said on both sides of the question," and that the question "has divided courts around the country." Slip op. at 26. Indeed, *Millet* dealt only in passing with the appellant's claim that the officer "searched him illegally because she did not intend to arrest him at that time," calling it "without merit" and easily disposing of it in a footnote. *Millet*, 977 A.2d at 937 n.6. This was primarily on factual rather than legal grounds, moreover, because, at the time of the search, the officer already had legally found a bag containing marijuana in the car, had arrested the driver, Mr. Fountain, for driving under the influence of marijuana, and had "told Millet and Fountain that they would both be charged in connection with the marijuana found in the bag." *Id*. at 934. It was clear enough that Mr. Millet would be arrested and that the search was incident to arrest, and therefore this court devoted its analysis to whether the arrest was lawful—that is, whether the police officers had probable cause, at the time of the search, to arrest—and ultimately decided that they did.[11]

---

[11] *See United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012) (noting that "stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question" (quoting *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994))).

This explains the court's statement, now understood in context, that the search was valid "if the officers had probable cause to arrest him independent of the search itself." *Millet*, 977 A.2d at 935-36.

*Nash*'s reading of *Millet* is tough to reconcile with *Chimel* and its progeny. In essentially making probable cause to arrest enough to justify a search under the search-incident-to-arrest exception, it transforms the search-incident-to-arrest exception into an "arrestable" exception—precisely the transformation that *Robinson* and *Knowles* guard against.[12]

---

[12] The *Nash* decision does not directly state that probable cause to arrest is sufficient to justify a search under the search-incident-to-arrest exception, but instead framed the question before it in terms of the following four components: "As we view it, the question presented in this case is whether the police lawfully may search a vehicle incident to the arrest of a suspect if, at the time of the search, (1) the police have probable cause to arrest the suspect for an offense; (2) the police have seized the suspect but have not placed the suspect under formal arrest; (3) it is unclear what, if anything, the police have decided with respect to the arrest of the suspect; and (4) the police subsequently do place the suspect under arrest for the offense." *Nash*, slip op. at 22. The last three parts—that the police have not yet arrested the suspect, have not yet decided to arrest the suspect, and, following the search, do arrest the suspect—add little to this equation, however. *Nash* emphasizes that *Knowles* was factually different because the officer there admitted that he had decided not to arrest the suspect before conducting the search, while in *Nash,* the police officer's intent was uncertain. *See Nash*, slip op. at 21, 22. Yet authorizing such a search—purportedly made "incident to arrest"—because the police officer has not made a decision whether to arrest would seem to legitimize the sort of plainly investigative searches that the majority here acknowledges run afoul of the Fourth Amendment.

Because the record in this case signals that the officer's discovery of drugs in Mr. Butler's shoe "was the precipitating or catalytic agent" for his arrest and there was "no suggestion that [Mr. Butler] was going to be arrested regardless of what the search . . . revealed," *Funkhouser*, 782 A.2d at 408, this search was unconstitutional because police did not conduct the search incident to Mr. Butler's arrest.